508 P.2d 51

STATE of Arizona, Appellee,

v.

Fred YOUNG, Appellant.

No. 2293.

Supreme Court of Arizona,
In Division.

March 30, 1973.

Rehearing Denied May 1, 1973.

**222**

Gary K. Nelson, Atty. Gen. by Peter Van Orman, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Anne Kappes, Deputy Public Defender, Phoenix, for appellant.

HAYS, Chief Justice.

Fred Young was charged with murder in violation of A.R.S. §§ 13–451, 452 and 453 for the killing of Wesley Patterson. He was tried by a jury and found guilty of voluntary manslaughter with a deadly weapon. His motion for a new trial was denied and he was sentenced to from fourteen to twenty years in the state prison.

Three questions are presented on review:

(1) Was defendant entitled to an instruction on involuntary manslaughter?

(2) Was defendant denied a fair trial by the prosecution's cross-examination and closing argument when the prosecutor accused the defendant of fabricating a story about the victim's conviction for a crime of violence when the victim had, in fact, been convicted of assault with a deadly weapon?

(3) Did the following instruction given by the court on its own motion shift the burden of proof of innocence to the defendant, deprive him of the benefit of a presumption of innocence, and deny him the protection of the doctrine of reasonable doubt?

> "You are further instructed that upon a trial for homicide the commission of the homicide by the defendant being provided, the burden of proving the circumstances of mitigation to justify or excuse it revolves upon the defendant unless the proof on the part of the prosecution tends to show that the alleged crime committed only amounts to manslaughter or that the homicide was justifiable or excuseable [sic]."

The defendant testified to the following facts at trial: He and the victim, Wesley Patterson, were roommates at the time of the offense, August 2, 1970. Young and Patterson spent the day of the killing together, first at two friends' houses and then at Myles Lounge, until about 12:45 a. m. While they were walking home from the cocktail lounge, Patterson told defendant he intended to break into a small grocery store and told defendant to go home. Defendant tried to talk his roommate out of breaking into the store. Patterson became angry, climbed on the roof of the store and said: "Freddy, I've been killing niggers all my life. This is your night to die." Patterson habitually became violent when drunk and he had told Young that he had stabbed a girl 29 times, that she had died and that he had served 29 months at

Florence for manslaughter. He also told Young that he had been returned to prison for carrying a concealed weapon.

The two men walked down the street still arguing. Finally, the victim began to advance on Young with a knife and the defendant started backing up. Defendant picked up a rock and threw it so that it bounced off the victim's head. Patterson charged at the defendant again and the two struggled over possession of the knife. They fell and the victim began to make gurgling sounds. The knife was stuck in Patterson's throat.

The medical examiner, Dr. Jarvis, testified that the death was primarily due to multiple blunt injuries of the head with a depressed fracture of the left skull. He also testified that he believed "the knife wounds contributed and might in themselves have been fatal." He found two small incisions plus two stab wounds, as well as numerous blunt, force injuries.

An investigating officer, Officer Benson, testified that there were blood spatters radiating out from the body as if the person had been struck while lying there. He also testified that he found pieces of scalp and hair on the ground, a brick with blood and hair on one portion, and a two-by-four board with blood and hair on it.

■ Young's first contention is that the court erred in denying his request for an instruction on involuntary manslaughter. We find defendant's argument parallel to that of the defendant in State v. Prewitt, 104 Ariz. 326, 452 P.2d 500 (1969), and find the following language in *Prewitt* applicable to the instant case:

"The court instructed the jury on voluntary manslaughter. In a homicide case, it is the duty of the trial judge to instruct the jury on every grade of offense the evidence tends to show defendant guilty of, and conversely refuse to instruct as to other grades of the offense, of which the evidence shows he could not be guilty. Antone v. State, 49 Ariz. 168, 65 P.2d 646; Miranda v. State, 42 Ariz. 358, 26 P.2d 241.

"Involuntary manslaughter as distinguished from voluntary manslaughter contemplates an act committed *unintentionally* rather than intentionally. State v. Madden, supra [104 Ariz. 111, 449 P.2d 39]; State v. Foggy, 101 Ariz. 459, 420 P.2d 934; Harding v. State, 26 Ariz. 334, 225 P. 482. The evidence shows an intentional act, rather than an unintentional act. As a matter of fact, one of the defenses of defendant was self-defense." 104 Ariz. at 332, 452 P.2d at 506.

At best, the evidence in the instant case shows that Young was acting in self-defense. The physical evidence at the scene of the crime would indicate that he continued to beat Patterson once he had already been incapacitated. Under the circumstances, we can find no evidence of an unintentional act and, therefore, hold that the court's denial of the request for an involuntary manslaughter instruction was not error.

Second, Young argues that he was denied a fair trial when the prosecution, both in cross-examination of the defendant and in closing argument to the jury, accused the defendant of fabricating the story of Patterson's record of conviction for a crime of violence.

■ We agree with the defendant that an accused should be permitted to introduce evidence of specific acts of violence by the deceased, whether observed by the defendant himself or simply known by him prior to the homicide. The purpose of this evidence is to show that a defendant claiming self-defense was justifiably apprehensive of the decedent and that the decedent was of a violent and turbulent disposition. State v. Jackson, 94 Ariz. 117, 382 P.2d 229 (1963).

■ Young contends that the following cross-examination and the following comments in closing argument were error.

Cross-examination:

"Q Would you say I would be mistaken if I told you that he never stabbed anybody 29 times?

**224**

"A Well, I wouldn't say that you were mistaken. All I can go on is what he told me. He just volunteered, told me this, and so I didn't think I needed to go pull the police record.

"Q Would I be mistaken if I told you he had never been convicted of manslaughter?

"A Like I said, this is what he told me.

"Q And also about him going back to prison for carrying a concealed weapon?

"A He also told me that.

"Q You said he told you all these things?

"A Yes, he did.

"Q Did he tell you how long he had been in prison?

"A He said the first time he went in for manslaughter and he said he stayed 29 months and the second time he went back for an ex-con carrying a concealed weapon, he said he stayed 7 months, I believe it was, because he said he got out in 1968.

"Q So he told you, for stabbing some girl 29 times, he spent about two and a half years?

"A Right.

"Q Did you believe this when he told you this?

"A Yes, I did." (RT III 80–81)

After defense counsel had referred to the victim as a convicted murderer and accused the State of hiding the fact, the prosecutor said the following in his closing argument:

"Then he says we are hiding records. You saw me hand Mr. Remender the police records during the trial. Did it appear we were trying to hide anything? If, in fact, Mr. Patterson was a convicted murdered [sic], there are records to that effect. Mr. Remender could have produced those records. The only testimony of that is coming from the person who killed him, the person who has ev-

erything to lose and nothing to gain by testifying falsely.

"Consider all of his testimony, the number of times he has admitted fabricating a story.

"Secondly, even if you assume that he wasn't fabricating these stories about Mr. Patterson, what gives him the right to kill somebody who might not be the upstanding citizens that we are?" (RT IV 70)

Young correctly argues that the suppression by the prosecution of evidence favorable to an accused upon request violates due process when that evidence is material either to guilt or to punishment. Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Wilful or negligent withholding of material evidence is error and violates fundamental fairness. State v. Maloney, 105 Ariz. 348, 464 P.2d 793 (1970); State v. Fowler, 101 Ariz. 561, 422 P.2d 125 (1967). The evidence in the instant case does not, however, deal with physical evidence under the control of the prosecutor which was destroyed or suppressed. Although Patterson's record of conviction was a matter of public record, there is no indication that either the prosecutor trying the case or the defense counsel was aware of it except by way of the defendant's testimony. As a matter of fact, the victim had been convicted of assault with a deadly weapon, but this point was not raised in the motion for new trial and only became a matter of record before this court by way of a supplemental filing. Defense counsel did not object to this line of argument at the time of trial.

■■ A party is allowed great latitude in cross-examining a witness. Under ordinary circumstances, the cross-examining counsel has a right to show any fact which may tend to affect credibility in the slightest degree. Udall, Arizona Law of Evidence § 45, 68 (1960). The fact that the defense presented no evidence to buttress Young's testimony that the decedent had been convicted of a violent crime tended to affect defendant's credibility.

Wide latitude is also permitted in presenting closing arguments to the jury. Under Arizona law, attorneys are permitted to comment on the evidence already produced and to argue reasonable inferences from that evidence. State v. Gonzales, 105 Ariz. 434, 466 P.2d 388 (1970). Although the following language from Samish v. United States, 223 F.2d 358 (9th Cir. 1955), is directed to witnesses rather than to evidence, we find the same principle applicable in the instant case. "[R]ules restricting comment on failure to produce witnesses should be restricted to those who are available both legally and practically to [only] one side." 223 F.2d at 365.

Third, Young argues that the following instruction by the judge improperly shifted the burden of proof to the defendant:

"You are further instructed that upon a trial for homicide the commission of the homicide by the defendant being proved, the burden of proving the circumstances or mitigation to justify or excuse it revolves upon the defendant unless the proof on the part of the prosecution tends to show that the alleged crime committed only amounts to manslaughter or that the homicide was justifiable or excusable."

A.R.S. § 13–454 (proof by defendant of mitigating circumstances or excuse; exception) provides that:

"Upon a trial for murder, the commission of the homicide by defendant being proved, the burden of proving circumstances of mitigation, or circumstances that justify or excuse it, devolves upon defendant, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter or that the homicide was justifiable or excusable."

Under § 13–454, when the State has proved beyond a reasonable doubt that the defendant committed the homicide, it has automatically proved that the defendant acted intentionally and maliciously unless there is some evidence of mitigation, justification or excuse. Without this additional proof, the defendant would be guilty of second degree murder. Both Arizona and California, from whom we got the statute, have construed the statute as shifting the burden of going forward with the evidence, but not the burden of proof, from the State to the defendant. State v. Preis, 89 Ariz. 336, 362 P.2d 660, cert. denied, 368 U.S. 934, 82 S.Ct. 372, 7 L.Ed.2d 196 (1961); People v. Deloney, 41 Cal.2d 832, 264 P.2d 532 (1953).

The instruction at issue in the instant case, although practically identical to the A.R.S. § 13–454, is concededly somewhat ambiguous. Justice Bernstein considered a § 13–454 instruction in State v. Maloney, 101 Ariz. 111, 416 P.2d 544 (1966), and concluded that it is better practice for the trial court to avoid instructing the jury in the language of the statute. We wholeheartedly agree with his conclusion, but in reviewing the instructions as a whole, we can find no prejudicial error.

Conviction affirmed.

STRUCKMEYER and LOCKWOOD, JJ., concur.