555 P.2d 111

**STATE of Arizona, Appellee,**

v.

**Cynthia Maria DENNY, Appellant.**

**No. I CA–CR 1234.**

Court of Appeals of Arizona,
Division 1,
Department C.

Aug. 17, 1976.

Rehearing Denied Sept. 22, 1976.

Petition for Review Denied Oct. 13, 1976.

Bruce E. Babbitt, Arizona Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div. and Stanley L. Patchell, Asst. Attys. Gen., Phoenix, for appellee.

Charles Anthony Shaw, Prescott, for appellant.

## OPINION

NELSON, Judge.

Cynthia Maria Denny was found guilty of voluntary manslaughter in the death of her husband, Gary Denny, in the early morning hours of September 28, 1974 as a result of a shotgun wound admittedly caused by a shotgun fired by the appellant.

Mrs. Denny was charged with first degree murder on October 7, 1974. After a series of pretrial motions, including a motion for change of venue which was granted, trial was commenced in Flagstaff, Arizona on February 18, 1975. On February 28, 1975, the jury returned a verdict of voluntary manslaughter. Judgment of guilt was entered on the verdict of the jury, and, on April 4, 1975, Mrs. Denny was sentenced to a term of not less than five nor more than ten years in the Arizona State Prison. This appeal followed. For the reasons set forth herein, the judgment of guilt and the sentence thereon are reversed and the cause is remanded for a new trial.

The appellant has denominated some seven questions for review. We have consolidated the questions into four major areas of concern:

### I

Were the two inculpatory statements (confessions) of appellant made to police officers immediately after the shooting

properly admitted into evidence, one as substantive evidence, and one for purposes of impeachment after she had taken the witness stand in her own defense?

## II

Was evidence of prior bad acts of Mrs. Denny properly admitted?

## III

Was the jury properly instructed on the issue of "voluntariness" of the confessions?

## IV

Should the jury have been given the option of returning a verdict of involuntary manslaughter based upon the evidence admitted?

## I

### THE CONFESSIONS

The appellant made two inculpatory statements or confessions shortly after the shooting of her husband. One was made at the scene of the shooting, the couple's trailer home. The second statement was made at the police station in the presence of a deputy county attorney and various police officers, and was tape recorded.

Appellant claims both statements were involuntary because of her severe emotional state following the shooting. This claim has no merit. There is no issue here regarding the admonition of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Mrs. Denny was carefully and fully advised of her rights by all of the police officers in question and by the deputy county attorney before the taped interview. There is no claim that the dictates of *Miranda* were not scrupulously observed.

At the hearing held outside the presence of the jury, *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L. R.3d 1205 (1964); *State v. Owen*, 96 Ariz. 274, 394 P.2d 206 (1964), three police officers, the deputy county attorney who conducted the taped interview, four M.D.s,

two of whom were psychiatrists, and Cynthia Denny testified.

Each of the police officers described Mrs. Denny as being nervous and at times crying. She expressed continuous concern over her husband's condition. They were all, however, very certain that she was in full posession of her mental faculties and understood what was going. She was described by them as being lucid, responsive, rational and calm. She especially calmed down after the ambulance arrived and transported her husband to the hospital. The import of the deputy county county attorney's testimony was similar.

Dr. Otto L. Bendheim, a psychiatrist called by the defense, testified that Mrs. Denny's mental state at the time of her interrogation immediately following the shooting was not severe and would not in any way vitiate the statements she gave. Dr. Jerry Kendall Wallis, another psychiatrist called by the defense, testified that Mrs. Denny was in a fugue state immediately following the shooting. He described such a condition as a "hysterical, dissassociated process, whereby the person's identity is narrowed down to a single track and possibly carries out a single drive". Dr. Wallis was of the opinion that Mrs. Denny could not have understood or appreciated the significance of her statements at the time she was interrogated.

Mrs. Denny herself took the stand at this initial hearing. The essence of her testimony is that she didn't remember much about what was said and that her major concern was for the welfare of her husband. When she was erroneously told her husband was going to be all right— when in fact he was already dead—she said she relaxed.

The other two doctors testified mainly concerning Gary Denny's wounds, the time he was officially pronounced dead, and their communication of that fact to the police officers.

■ It is the law in this jurisdiction that the trial court's determination of the admissibility of a confession will not be

disturbed upon appeal unless a clear and manifest error appears. *State v. Edwards,* 111 Ariz. 357, 529 P.2d 1174 (1974), *State v. Pulliam,* 87 Ariz. 216, 349 P.2d 781 (1960). As regards Mrs. Denny's mental state, the evidence amply supports the trial court's view that the statements were voluntarily and freely given.

■ An additional factor, however, was introduced into the situation prior to the tape recorded statement. In response to Mrs. Denny's repeated requests and continuously expressed concern about her husband's condition, she was advised by one of the police officers that "he was going to be all right and was going to make it", when in fact the officer had already been informed that Gary Denny had died. The trial court excluded the second confession from use by the State in its case-in-chief because of the misstatement of the police officer.

After Mrs. Denny took the stand in her own defense, the trial court allowed the State to use the second confession for impeachment purposes on the authority of *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). *See also: Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975). The holding in *Harris,* supra, confirmed in *Oregon v. Hass,* supra, is that a statement or confession obtained in technical violation of the rules in *Miranda,* supra, although not admissible as direct proof of guilt, may still be admissible for purposes of impeachment "provided of course that the trustworthiness of the evidence satisfies legal standards." *Harris v. New York,* supra, 401 U.S. at 224, 91 S.Ct. at 645, 28 L.Ed.2d at 4. E. g., *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); *Haynes v. Washington,* 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); *Lynumn v. Illinois,* 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963); *Blackburn v. Alabama,* 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960).

There is, of course, as indicated above, no claimed violation of *Miranda v. Arizo-na,* supra. We do not believe the trial court's extension of the doctrine of *Harris v. New York,* supra, to confessions obtained by misrepresentation or trickery is warranted and therefore must reverse this case.

The United States Supreme Court in *Miranda v. Arizona,* supra, devoted considerable time to the issue of obtaining confessions by trickery or deceit. The essence of what happened here is that Mrs. Denny was obviously more interested in finding out how her husband was doing than in talking further with the authorities. Observing this fact, rather than stopping the interrogation and taking Mrs. Denny to the hospital, or telling her the truth that her husband had died, both courses of action which would probably have ended the interrogation at that time, one of the officers simply told her a lie concerning her husband's true condition, and proceeded with the taped interview. In our view, statements obtained in such a fashion do not satisfy legal standards as to trustworthiness, *Harris v. New York,* supra.

■ We agree with the New York court in the post-*Harris* decision of *People v. Utley,* 77 Misc.2d 86, 353 N.Y.S.2d 301 (1974);

"Where there are other reasons for the exclusion [reasons other than technical violations of Miranda], however, such as trick, promise, or coercion, the trustworthiness of the statement is placed in issue, and the statement may not be used for any purpose, including impeachment on cross-examination, without a hearing to determine its voluntariness." 353 N.Y.S.2d at 315. [Bracketed material added]

While the judge here did hold such a hearing, he in fact found the confession to be obtained by misrepresentation and excluded it from use by the State as direct proof of guilt. This finding should have excluded the use of the statement for all purposes. *Harris v. New York,* supra.

## II

## PRIOR BAD ACTS

■ Over objection, the State was allowed to introduce evidence, in alleged rebuttal of Mrs. Denny's proof of self defense, that she shot her prior husband some 22 months before. The decision of this Court in *State v. Hannon*, 5 Ariz.App. 291, 425 P.2d 861 (1967) and the decision of the Arizona Supreme Court in *Leonard v. State*, 17 Ariz. 293, 151 P. 947 (1915) are cited in support of this proposition. Neither these cases, nor any other cases cited by the State support the introduction of this evidence of a prior shooting as proof of the fact Mrs. Denny did not act in self defense. It was prejudicial error to allow such evidence to be presented to the jury.

The best indication as to what the evidence was introduced for is found in the quotation from the State's closing argument to the jury set forth in the State's own brief:

"There was a piece of evidence which the State introduced in rebuttal that went to the issue of self-defense, whether or not the Defendant should reasonably believe that the Defendant reasonably believed she was entitled to self-defense [sic]."

[Transcript reference omitted]

\*   \*   \*   \*   \*   \*

"That evidence was introduced for the limited purpose not to show she committed another crime, but to show that when she is faced with this kind of situation, she knows what she is doing.

"She goes and gets a gun and shoots somebody; that it was not self-defense at all, but she acted as she is wont to act.

"She acts this way under these circumstances.

"Remember, these were only twenty-two months apart."

[Transcript reference omitted]

In addition, in attempting to fit this situation into *Leonard v. State*, supra (the 1915 case which allowed evidence of prior bad acts against the same victim some three to four years earlier to show motive), the State's own characterization in its brief is instructive:

"In our situation, while the names had changed the victims were, in reality, the same person—the husband of the defendant—and the situations of the shootings were the same as well."

In essence, the State is urging that this evidence tends to prove Mrs. Denny has the propensity to shoot her husbands not in self defense, regardless of what the evidence shows in a particular case, simply because she shot one once. As the State told the jury, "She acts this way under these circumstances." This is simply not the law.

■ The broad general rule is that the prosecution may not introduce evidence of other unrelated similar criminal acts of an accused unless the evidence is substantially relevant for some other purpose than to show a propensity or probability that the person committed the act he or she is being tried for because he or she is a person of criminal character or predisposition. *State v. Thomas*, 71 Ariz. 423, 229 P.2d 246 (1951); *State v. Johnson*, 94 Ariz. 303, 383 P.2d 862 (1963). While the State attempts to show that the introduction was for one of the substantially relevant other purposes, i.e., impeachment, completion of the story of a given crime, intent, motive, malice, common plan, identity, etc., it is clear from the State's closing argument, as well as its own brief, that the evidence was introduced to prove that Mrs. Denny has a predisposition to shoot husbands. We have not been cited to any cases where such an exception has been made to the general rule of exclusion, similar to the exception regarding incest or other unusual sex offenses, e.g., *State v. McDaniel*, 80 Ariz. 381, 298 P.2d 798 (1956). We do not believe there is such an exception.

■ The reasons set forth above requiring the rejection of the testimony covering

the prior shooting incident of her former husband clearly justify the admission of the evidence tending to show a prior attempted assault with an automobile on Gary Denny only five months prior to the shooting in question. Mrs. Denny was allowed to show many instances of personal abuse at the hands of Gary Denny. This incident clearly tends to show malice and intent and motive on her part, and was properly admitted. *Leonard v. State,* supra; *State v. Tostado,* 111 Ariz. 98, 523 P.2d 795 (1974).

## III

### JURY INSTRUCTIONS AS TO VOLUNTARINESS

■ The trial court rejected Mrs. Denny's proffered instructions on the issue of voluntariness and gave instead, over objection, the Recommended Arizona Jury Instruction (RAJI) No. 7[1]. While it is clear that some additional language may be appropriate in cases where there is conflicting evidence regarding trickery or deceit in obtaining statements, the general language of the instruction is sound. *State v. Kelley,* 110 Ariz. 196, 516 P.2d 569 (1973). In any event, in light of our holding in Part I, supra, there is no likelihood of error in this regard on retrial.

## IV

### SHOULD THE JURY HAVE BEEN GIVEN THE OPTION OF RETURNING A VERDICT OF INVOLUNTARY MANSLAUGHTER?

■ It is apparently the position of the State, accepted by the trial court, that Mrs. Denny's defense of self-defense is inconsistent with a claim of involuntary manslaughter, A.R.S. § 13–456(A)(2). If her theory was that she killed Gary Denny in self defense, she therefore must have in-

tended to kill him, hence the unintentional act required for involuntary manslaughter could not have been present, or simultaneously urged. *State v. Young,* 109 Ariz. 221, 508 P.2d 51 (1973); *State v. Prewitt,* 104 Ariz. 326, 452 P.2d 500 (1969); *State v. Madden,* 104 Ariz. 111, 449 P.2d 39 (1969).

Mrs. Denny testified that she aimed the gun to the left of Gary Denny to scare him and to get him away from her. If the jury chose to believe her testimony in this regard, but rejected the claim of self defense, under the case law in this jurisdiction, they could have found Mrs. Denny guilty of involuntary manslaughter. *State v. Mathis,* 92 Ariz. 194, 375 P.2d 388 (1962); *Harding v. State,* 26 Ariz. 334, 225 P. 482 (1924).

We fail to find any inconsistency in the positions offered by the defense in this case. It is urged that Mrs. Denny was in fear of her life or great bodily harm from Gary Denny, and had a right to defend herself, even to the extent of taking a life. In any event, even if she did not, she only shot to scare him and did not intend to hit him or kill him. The other side of the theories is equally consistent. She loaded the shotgun, waited for him to return and shot him, intending to kill him, leaving to the jury the issue of "sudden quarrel or heat of passion" in determining whether the intentional homicide was murder or manslaughter.

■ In the cases cited where involuntary manslaughter instructions were not given (*Young, Prewitt, Madden,* supra), there were no facts supporting such a theory under our law. In this case, there are such facts, if believed (*Mathis, Harding,* supra), and in such a case, the jury must be instructed on every grade of the offense supported by the evidence. *State v. Harwood,* 110 Ariz. 375, 519 P.2d 177 (1974).

[1]. RAJI No. 7: "You must not consider any statements made by the defendant to a law enforcement officer unless you determine beyond a reasonable doubt that the defendant made the statements voluntarily.

"The defendant's statement is not voluntary whenever a law enforcement officer used any sort of violence or threats or any promise of immunity or benefit."

Unlike *Mathis* and *Harding*, supra, where the differentiation or failure to differentiate between the two types of manslaughter was held not to be prejudicial in those cases, here, due to the amendments to A.R.S. § 13–457 in 1967 (Laws 1967, Ch. 62, § 5), there is great potential prejudice. Voluntary manslaughter committed by a person armed with a gun or deadly weapon is punishable by a minimum term of not less than five years, A.R.S. § 13–457B. The record clearly reflects that this is the section under which Mrs. Denny was sentenced and that the trial court judge gave her the minimum sentence possible. Had the jury returned a verdict of guilty of involuntary manslaughter, Mrs. Denny could have been sentenced to a minimum term of less than five years, A.R.S. § 13–457A.

## CONCLUSION

For the reasons set forth above, the judgment of guilt and the sentence thereon are reversed and the cause is remanded for a new trial.

HAIRE, Chief Judge Division 1, concurring.

EUBANK, Judge (dissenting in part).

I concur with the majority opinion conclusions in Sections II (Bad Acts), III (Jury Instructions), IV (Jury Option—Involuntary Manslaughter), but I dissent from those set out in Section I (The Confessions).

It is my opinion that *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed. 2d 1 (1971), applies to the facts here. *Harris* holds that an accused's prior inconsistent statements, not admissible under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), may be used to impeach the accused's credibility if he elects to take the stand and testify. The rationale of the Court was based on *Wald-*

*er v. United States*, 347 U.S. 62, 65, 74 S. Ct. 354, 356, 98 L.Ed. 503, 507 (1954), where Justice Frankfurter said:

"It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths. Such an extension of the Weeks doctrine would be a perversion of the Fourth Amendment."

This is the law in Arizona. A.R.S. § 13–163(A) provides:

"A defendant in a criminal action or proceeding shall not be compelled to be a witness against himself, but may be a witness in his own behalf. If he offers himself as a witness in his own behalf, he may be cross-examined to the same extent and subject to the same rules as any other witness."

*See State v. Young*, 109 Ariz. 221, 508 P. 2d 51 (1973); *State v. Thompson*, 110 Ariz. 165, 516 P.2d 42 (1973); Udall, Arizona Law of Evidence, §§ 45, 68 (1960).

Although the "exclusionary" rule has been extended to cover the *pre-trial silence* of a defendant when it is introduced for impeachment purposes on cross-examination (*Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976)), pre-trial silence is not involved here. *See State v. Scott*, 26 Ariz.App. 361, 555 P.2d 118 (filed July 29, 1976). *Harris* permits the introduction of the taped confession on cross-examination because of the great need to permit the jury to know the truth and to assess the defendant's credibility, especially since she has taken the oath to tell the truth. To reject such evidence is to sanction half-truth, or, worse yet, perjury.