IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

MAY 31 2013

COURT OF APPEALS
DIVISION TWO



|                          |   |                    |
|--------------------------|---|--------------------|
| THE STATE OF ARIZONA,    | ) |                    |
|                          | ) | 2 CA-CR 2011-0249  |
| Appellee,                | ) | DEPARTMENT B       |
|                          | ) |                    |
| v.                       | ) | O P I N I O N      |
|                          | ) |                    |
| JESUS XAVIER ALMAGUER,   | ) |                    |
|                          | ) |                    |
| Appellant.               | ) |                    |
|                          | ) |                    |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20083840

Honorable Jose H. Robles, Judge Pro Tempore

AFFIRMED

Thomas C. Horne, Arizona Attorney General
 By Joseph T. Maziarz and Kathryn A. Damstra                    Tucson
                                                    Attorneys for Appellee

Lori J. Lefferts, Pima County Public Defender
 By Frank P. Leto                                               Tucson
                                                    Attorneys for Appellant

E S P I N O S A, Judge.

¶1          Jesus Almaguer was charged with second-degree murder, and a jury convicted him of the lesser offense of manslaughter.  The trial court found a prior

burglary conviction and sentenced Almaguer to an aggravated term of nineteen years' imprisonment based on the use of a deadly weapon, harm to the victim's family, and Almaguer's fleeing the scene of the homicide. He appeals his conviction on the ground he was denied his constitutional right to a fair trial, specifically challenging various jury instructions, the court's preclusion of certain testimony, and its denial of his motion for a mistrial based on a witness's "outburst." For the following reasons, we affirm.

**Factual Background and Procedural History**

¶2 We view the facts in the light most favorable to sustaining the verdict, resolving all reasonable inferences against the defendant. *State v. Karr*, 221 Ariz. 319, ¶ 2, 212 P.3d 11, 12 (App. 2008). Around midnight one Friday in May 2008, Almaguer and his friend Albert Cota attended a party at a Tucson apartment shared by Jolene L., her former boyfriend Abram, and their children. When Almaguer and Cota arrived, Abram's father Antonio, Sr. and brother Antonio, Jr. were drinking, smoking marijuana, and socializing with other guests.

¶3 Later in the evening, Antonio, Sr. and his sons were smoking on the balcony when Almaguer and Cota came out of the apartment and Cota urinated off the balcony. Abram verbally confronted Cota and cursed at him, and Almaguer said, "I wouldn't let him be talking shit like that to me." Abram swore at Almaguer, and Almaguer started walking toward him. Almaguer then punched Abram, and the two began to fight. Antonio, Sr. attempted to separate them, and Cota removed his shirt, preparing to join the fight. Antonio, Sr. told Almaguer to leave, and Almaguer reached

2

for a handgun secured in his belt. Antonio, Sr. knocked him to the ground. As the two wrestled, Antonio, Jr. and Abram joined the fray, and Almaguer fired the gun once, shooting Antonio, Jr.[1] Almaguer stood up and pointed the gun at Antonio, Sr. and Abram, and Cota yelled, "[S]hoot him, shoot him," and, "Did we get him? Did you get him? Shoot again." They both fled to Almaguer's vehicle. As they drove away, Cota telephoned Jolene to say he was sorry and "it[ wa]s not supposed to happen that way." Antonio, Jr. died from his injury.

¶4 Police located and pursued a vehicle matching the description of the car driven by Cota and Almaguer, but it evaded them. Cota was arrested the next day, and a warrant was issued for Almaguer, who eventually was extradited from Mexico in April 2010. He was tried, convicted, and sentenced as described above. We have jurisdiction over his appeal pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A).

## Discussion

**Jury Instructions**

¶5 Almaguer asserts his constitutional right to a fair trial was violated when the trial court failed to give certain requested jury instructions. *See* U.S. Const. amends. VI, XIV; Ariz. Const. art. II, § 4. He argues the court was required to instruct the jury

---

[1]Although Almaguer claims the evidence only shows the gun "was fired," we view the evidence in the light most favorable to sustaining the verdict, *see Karr*, 221 Ariz. 319, ¶ 2, 212 P.3d at 12, and the jury readily could infer Almaguer fired his pistol after pulling it from his belt.

on the state's burden to disprove his claim he had acted in self-defense as to the lesser offenses of manslaughter and negligent homicide, and also erred by denying his request for instructions defining the terms "proximate cause" and "voluntary act." "We review the trial court's decision to give or refuse a jury instruction for an abuse of discretion." *State v. Hurley*, 197 Ariz. 400, ¶ 9, 4 P.3d 455, 457 (App. 2000). Moreover, the court has an independent duty to instruct on the law when the matter is vital to a proper consideration of the evidence, even if the particular instruction is not requested. *State v. Avila*, 147 Ariz. 330, 337, 710 P.2d 440, 447 (1985). We view the instructions as a whole to determine *de novo* whether a given instruction correctly states the law. *State v. Abdi*, 226 Ariz. 361, ¶ 5, 248 P.3d 209, 211 (App. 2011).

Justification Instruction

¶6        The use of deadly physical force in self-defense is justified "[w]hen and to the degree a reasonable person would believe that deadly physical force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly physical force." A.R.S. § 13-405(A)(2). A defendant is entitled to a jury instruction on justification when he presents the "slightest evidence" tending to prove "a hostile demonstration, which may be reasonably regarded as placing the accused apparently in imminent danger of losing h[is] life or sustaining great bodily harm." *State v. Lujan*, 136 Ariz. 102, 104, 664 P.2d 646, 648 (1983); *see also State v. Andersen*, 177 Ariz. 381, 386, 868 P.2d 964, 969 (App. 1993). Justification is not an affirmative defense; instead, if a defendant presents evidence of self-defense, the state must prove "'beyond a

4

reasonable doubt that the defendant did not act with justification.'" *State v. King*, 225 Ariz. 87, ¶ 6, 235 P.3d 240, 242 (2010), *quoting* A.R.S. § 13-205(A).  We review *de novo* whether, as a question of law, justification may be raised to defend against charges of manslaughter and negligent homicide.  *See id.* ¶ 5 (interpretation of self-defense statute reviewed *de novo*); *State v. Nelson*, 214 Ariz. 196, ¶ 7, 150 P.3d 769, 770 (App. 2007) (reviewing *de novo* allegedly incompatible jury instructions on accomplice liability and negligent homicide because issue involves statutory construction and question of law).

¶7        Almaguer supported his allegation of self-defense through the testimony of others.  *See Karr*, 221 Ariz. 319, ¶ 14, 212 P.3d at 14 (defendant entitled to self-defense instruction if reasonably supported by defendant's version of facts).  Based on Almaguer's self-defense theory, the court gave the following instruction:

> If evidence was presented that raises the defense of self-defense for second degree murder, then the State has the burden of proving beyond a reasonable doubt that the defendant did not act with such justification.  If the State fails to carry this burden, then you must find the defendant not guilty of the charge.

Almaguer argues, as he did below, the instruction should have provided specifically that if the state failed to carry its burden to disprove the justification defense, the jury should find him not guilty of all charges, including the lesser offenses of manslaughter and negligent homicide.  He asserts the court's failure to include his requested instruction

constitutes reversible error.[2] *See State v. Denny*, 119 Ariz. 131, 134, 579 P.2d 1101, 1104 (1978) (remanding for new trial where trial court provided no jury instruction on state's burden to disprove justification); *State v. Garcia*, 114 Ariz. 317, 560 P.2d 1224 (1977) (same).

¶8        The state argues that the reasonable-person standard applicable to justification is incompatible with the *mens rea* of recklessness applicable to manslaughter and negligent homicide,[3] and Almaguer therefore was not entitled to raise the justification defense as to the lesser offenses, citing decisions from Colorado and

---

[2]Almaguer's proposed instruction stated:

> If evidence was presented that raises the defense of self-defense for count one, second degree murder, and any and all lesser-included offenses, then the State has the burden of proving beyond a reasonable doubt that the defendant did not act with such justification. If the State fails to carry this burden, then you must find the defendant not guilty of the charges.

When the court refused his proposed instruction, Almaguer requested the court's instruction be modified to read:

> If evidence was presented that raises the defense of self-defense for second degree murder, then the State has the burden of proving beyond a reasonable doubt that the defendant did not act with such justification. If the State fails to carry this burden, then you must find the Defendant not guilty of Second Degree Murder and all of the lesser included offenses.

That request also was denied.

[3]Recklessly means "a person is aware of and consciously disregards a substantial and unjustifiable risk . . . of such nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." A.R.S. § 13-105(10)(c).

New Jersey in support of its conclusion that reckless acts can never be justified. *See People v. Castro*, 10 P.3d 700, 702 (Colo. App. 2000) (defendant may not raise justification defense for crimes involving reckless mental state); *State v. Rodriguez*, 949 A.2d 197, 200-01 (N.J. 2008) (exoneration on basis of self-defense clearly inconsistent with finding of manslaughter).

¶9 We disagree with the state's theory for several reasons. First, *Castro* is not persuasive because Colorado's justification defense and statutory burdens of persuasion differ from those in Arizona. *Compare* Colo. Rev. Stat. § 18-1-704(1) (defendant justified in using force when "he reasonably believes" force necessary to defend against "what he reasonably believes to be" unlawful force by another), *and People v. Pickering*, 276 P.3d 553, 555-57 & 556 n.4 (Colo. 2011) (state has no burden to disprove self-defense justification for crime involving recklessness), *with King*, 225 Ariz. 87, ¶¶ 11, 14, 235 P.3d at 243 (justification based on objective standard, permitting use of force only if "'reasonable person would believe that physical force is immediately necessary to protect himself'"; state bears burden to disprove theory), *quoting* A.R.S. § 13-404(A). And *Rodriguez* lends support to our conclusion, *infra* at ¶¶ 12-13, that although it is logically impossible for a jury to find a defendant guilty of a reckless offense while at the same time believing the defendant acted in self-defense, instructions on the two theories are not incompatible; in fact both would lead a jury to the same conclusion. 949 A.2d at 201-02 (because self-defense inconsistent with commission of reckless

7

manslaughter, self-defense constitutes complete defense to charge and jury should be instructed on duty to acquit if defendant's use of deadly force justified).

¶10        Precisely because the *mens rea* of recklessness is incompatible with the justification defense, a jury should be guided in reaching a legally correct verdict. *See State v. Noriega*, 187 Ariz. 282, 284, 928 P.2d 706, 708 (App. 1996) (purpose of jury instructions to inform jury of applicable law in understandable terms; "instructions are, in essence, a guide to the proper verdict"); *State v. Denny*, 27 Ariz. App. 354, 359, 555 P.2d 111, 116 (1976) (jury should be given both self-defense and manslaughter instruction so it may choose one theory). Although a jury may reach inconsistent verdicts, it is the trial court's obligation to instruct it correctly on the applicable legal principles. *Noriega*, 187 Ariz. at 284, 928 P.2d at 708 (court must evaluate whether instructions convey with sufficient clarity all legal concepts necessary to permit jury to arrive at lawful verdict).

¶11        Accordingly, Almaguer was entitled to raise justification as a complete defense to the homicide charge, including its lesser offenses. *See* A.R.S. § 13-401 (defendant may raise justification in defense of any criminal prosecution except reckless injury or killing of innocent third person); *State v. Dorman*, 167 Ariz. 153, 154-55, 805 P.2d 386, 387-88 (1991) (manslaughter conviction vacated and remanded for new trial where trial court refused requested self-defense burden-of-proof instruction); *State v. Duarte*, 165 Ariz. 230, 230, 232-33, 798 P.2d 368, 368, 370-71 (1990) (purpose of justification instruction "to inform the jury that acquittal is *mandatory* if the state fails to

disprove . . . a properly raised issue of self-defense"; upholding manslaughter conviction where instructions as whole informed jury of state's burden); *Denny*, 27 Ariz. App. at 359, 555 P.2d at 116 (theories of manslaughter and self-defense not inconsistent, and instruction proper as to both).

¶12        At the close of evidence, as noted earlier, the trial court instructed the jury,

> If evidence was presented that raises the defense of self-defense *for second degree murder*, then the State has the burden of proving beyond a reasonable doubt that the defendant did not act with such justification. If the State fails to carry this burden, then you must find the defendant not guilty of the charge.

(Emphasis added.)  This justification instruction technically directed the jury to acquit Almaguer if the state failed to disprove his self-defense theory, because "the charge" presumably comprised any lesser included offenses. *Hurley*, 197 Ariz. 400, ¶¶ 13-14, 4 P.3d at 458 (lesser included offense comprises fewer than all elements of greater crime; reckless manslaughter lesser included offense of knowing second-degree murder).  But, because the instruction singled out "second degree murder," we are persuaded it was confusing and did not give the jury sufficient guidance.  Indeed, the court would have been well-advised to adopt our supreme court's recommended instruction.[4]  However,

_____

[4]In the context of a manslaughter charge, the supreme court has recommended trial courts use the following instruction:

> If evidence was presented that raises the issue of self-defense . . . , then the state has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. If the state fails to carry this burden, then you must find the defendant not guilty of the charge.

although we agree with Almaguer that the instruction was erroneous, *see Noriega*, 187 Ariz. at 284, 928 P.2d at 708, we conclude the error was harmless because it did not affect the verdict. *See State v. McKeon*, 201 Ariz. 571, ¶ 31, 38 P.3d 1236, 1242 (App. 2002).

**¶13**      The jury found Almaguer guilty of manslaughter, which implies it necessarily determined he either (1) acted recklessly or (2) committed second-degree murder upon a sudden quarrel or in a heat of passion. *See* A.R.S. § 13-1103(A)(1), (2). But, contrary to Almaguer's suggestion, the jury could not have believed he was justified in his actions and also have concluded he had committed heat-of-passion manslaughter, because the two are mutually exclusive—heat-of-passion manslaughter necessarily includes second-degree murder, of which the jury could not convict if the state failed to disprove the act was justified. *See State v. Garcia*, 220 Ariz. 49, ¶¶ 6-7, 202 P.3d 514, 516 (App. 2008) (sudden-quarrel or heat-of-passion manslaughter includes elements of second-degree murder); *see also* A.R.S. §§ 13-1103(A)(2) (person commits manslaughter by committing second-degree murder upon sudden quarrel or heat of passion), 13-1104(A) (defining second-degree murder). Accordingly, the jury

---

*Duarte*, 165 Ariz. at 232, 798 P.2d at 370. The Revised Arizona Jury Instructions suggest the use of the following language immediately after the general "Justification for Self-Defense" instruction: "The State has the burden of proving beyond a reasonable doubt that the defendant did not act with such justification. If the State fails to carry this burden, then you must find the defendant not guilty of the charge." State Bar of Arizona, *Revised Arizona Jury Instructions (Criminal)* Stat. 4.04, at 62 (2012). Notwithstanding these two guides, the trial court inserted the sentence, "If evidence was presented that raises the defense of self-defense for second degree murder, then . . . ."

could not have found Almaguer guilty of heat-of-passion manslaughter had it determined his actions were justified.

¶14        Likewise, the jury could not have found Almaguer guilty of reckless manslaughter while believing he had acted in self-defense. The jury was properly instructed that to be guilty of reckless manslaughter, Almaguer must have "consciously disregard[ed] a substantial and unjustifiable risk," that was "of such nature and degree that disregard[ing it] constitute[d] a gross deviation from the standard of conduct [of] a reasonable person." A.R.S. § 13-105(10)(c); *see also* § 13-1103(A)(1). In contrast, to be justified by self-defense, Almaguer could have used or threatened deadly physical force only "[w]hen and to the degree a reasonable person would believe" such physical force was immediately necessary to protect himself. § 13-405(A). Thus, the jury could not have believed Almaguer was justified and reasonable, while at the same time finding he acted recklessly with unjustified force. *See State v. Vogel*, 207 Ariz. 280, ¶ 28, 85 P.3d 497, 503 (App. 2004) (based on manslaughter verdict, inferable jury did not adopt defendant's claim of self-defense); *cf. Rodriguez*, 949 A.2d at 201 (self-defense clearly inconsistent with finding of manslaughter based on reckless mental state).

¶15        Finally, during closing arguments both counsel presented the jury with legally correct interpretations of the instructions. *See State v. Johnson*, 205 Ariz. 413, ¶ 11, 72 P.3d 343, 347 (App. 2003) (jury instructions evaluated in context and in conjunction with closing arguments of counsel). Specifically, Almaguer's attorney argued, "[I]f you find that the State did not convince you that [Almaguer] didn't act in

self-defense, then [you have] to find him not guilty of second degree murder, not guilty of manslaughter, and not guilty of negligent homicide. . . . [Y]ou have to find him not guilty of every single charge." In a similar vein, the prosecutor argued:

> You have to look at second degree murder; look at manslaughter; look at negligent homicide; but you have to go in that order. If you find him guilty. . . , your job is not done, because he has asserted self-defense. And that is what this case is really all about. . . . We don't expect that somebody who is being put in a situation where force is being used against them to sit idly by.

We therefore conclude the erroneous jury instruction did not influence the jury to find Almaguer guilty under the mistaken belief that the state did not have the burden to disprove his justification defense as to the lesser offense of manslaughter. *See State ex rel. Thomas v. Granville*, 211 Ariz. 468, ¶ 8, 123 P.3d 662, 665 (2005) (jury instructions as whole must provide information necessary for jury to arrive at legally correct decision); *see also McKeon*, 201 Ariz. 571, ¶ 31, 38 P.3d at 1242. Because the instructions as a whole and the arguments of counsel guided the jury to a legally consistent verdict, any confusion arising from the justification instruction was harmless. *See Granville*, 211 Ariz. 468, ¶ 8, 123 P.3d at 665.

Definitional Instructions

¶16        Almaguer next asserts the trial court erred by denying his request for jury instructions defining "proximate cause" and "voluntary act." He argues that because he presented evidence the shooting had occurred during the struggle, the court's refusal to

instruct the jury on these theories violated his rights to due process and a fair trial and requires reversal. *See* U.S. Const. amends. V, VI, XIV; Ariz. Const. art. II, § 4.

¶17 Almaguer contends he was entitled to an instruction on proximate cause because the victim's family's struggle with him amounted to a superseding cause of the gun's discharge.[5] But an intervening event becomes a superseding event "only when 'its occurrence was both unforeseeable and when with benefit of hindsight it may be described as abnormal or extraordinary.'" *State v. Bass*, 198 Ariz. 571, ¶¶ 11, 13, 12 P.3d 796, 800-01 (2000), *citing Petolicchio v. Santa Cruz Cnty. Fair & Rodeo Ass'n*, 177 Ariz. 256, 866 P.2d 1342 (1994). Almaguer does not argue that the victim's and his family's conduct during the struggle was unforeseeable or that the victim's gunshot wound constitutes harm inconsistent with Almaguer's producing a gun during a fistfight. *See* A.R.S. § 13-203(C)(2). Almaguer's version of the facts did not place causation at issue, and the jury would not have been aided by a proximate-cause instruction. *See State v. Smith*, 160 Ariz. 507, 510, 774 P.2d 811, 814 (1989) (proximate-cause instruction given when causation in issue and instruction helpful to jury), *as limited in State v. Mott*, 187 Ariz. 536, 931 P.2d 1046 (1997).[6]

---

[5]Almaguer also seems to argue he was entitled to a causation instruction because the "cause of death [wa]s an issue." But the uncontroverted testimony demonstrated there was a fight, Almaguer produced the only gun, no one but Almaguer fired it, and the victim died as a result of a gunshot wound. *See* A.R.S. § 13-203(C)(2) (causation established if harm occurred in manner which defendant should have known was rendered substantially more probable by his conduct).

[6]Almaguer has cited no authority showing he was entitled to his proposed instruction. Neither *Smith*, 160 Ariz. 507, 774 P.2d 811, nor *Mott*, 187 Ariz. 536, 931

¶18　　Almaguer next asserts the trial court erred by denying his request for an instruction defining "voluntary act," based on his theory that he did not act voluntarily because his arm was "hit" during the struggle, causing the gun to discharge. But no evidence would have allowed the jury to reach that conclusion.

¶19　　A defendant may be held criminally liable only if his conduct includes a voluntary act. A.R.S. § 13-201. A voluntary act is a "bodily movement performed consciously and as a result of effort and determination." § 13-105(42). Involuntary acts include "the sorts of bodily movements that would not be 'performed consciously and as a result of effort and determination.'" *State v. Lara*, 183 Ariz. 233, 234, 902 P.2d 1337, 1338 (1995) (involuntary acts include heartbeat, breathing, and blinking, and "bodily movement while unconscious, asleep, under hypnosis, or during an epileptic fit"), *quoting* former § 13-105(34) (1994) (defining "voluntary act").[7] An instruction that the state must prove the defendant committed a voluntary act is appropriate only if there is evidence to support a finding of bodily movement performed unconsciously and without effort and determination, within the meaning of § 13-105(42). *Lara*, 183 Ariz. at 235,

---

P.2d 1046, stands for the proposition that a trial court is required to instruct the jury on proximate cause in every case where a defendant claims there is an issue of causation. Although our supreme court stated in *Smith*, in *dictum*, that the instruction should be given when causation is in issue and it would be helpful to the jury, 160 Ariz. at 510, 774 P.2d at 814, *Mott* clarified that no proximate-cause instruction is required when the instructions in their entirety properly inform the jury of the elements of the offense, including causation; it did not mandate that a proximate-cause instruction be given whenever a causation issue is raised. *Mott*, 187 Ariz. at 546, 931 P.2d at 1056.

　　[7]Renumbered § 13-105(42) by 2012 Ariz. Sess. Laws, ch. 190, § 1.

902 P.2d at 1339. This is not such a case. Almaguer's claim that the gun could have fired as a result of another person hitting him or his gun was based on speculation, rather than any evidence directly supporting his theory.

¶20 Because Almaguer's requested instructions on causation and voluntary act were not supported by the evidence, the trial court did not err in refusing to give them. *State v. Shumway*, 137 Ariz. 585, 588, 672 P.2d 929, 932 (1983) (party entitled to instruction on any theory of case reasonably supported by evidence); *see also State v. Moody*, 208 Ariz. 424, ¶¶ 200-01, 94 P.3d 1119, 1163 (2004) (no abuse of discretion in court's refusal to give voluntary-act instruction where defendant presented no testimony suggesting his actions not performed "consciously and as a result of effort and determination").

**Limitation on Cross-Examination**

¶21 Almaguer next argues he was denied his constitutional right to confrontation when the trial court precluded him from questioning Antonio, Sr. about a civil lawsuit Antonio, Sr. had filed against him based on the incident. *See* U.S. Const. amend. VI. He asserted that evidence of the lawsuit, which had been resolved by the time of trial, was relevant to demonstrate Antonio, Sr.'s motive and bias against Almaguer.

¶22 The Sixth Amendment protects a defendant's ability to prove a witness's motive or bias, and "Arizona case law . . . recognizes that evidence of a civil action by a complaining witness against the defendant, arising from the same transaction that is the

15

subject of the prosecution, has 'a direct bearing on the credibility of the witness to show bias and prejudice.'" *State v. Gertz*, 186 Ariz. 38, 42, 918 P.2d 1056, 1060 (App. 1995), *quoting State v. Burris*, 131 Ariz. 563, 567, 643 P.2d 8, 12 (App. 1982). As the state notes, however, the Confrontation Clause does not prevent a trial judge from imposing limits on defense counsel's inquiry into the potential bias of a prosecution witness; courts retain wide latitude to impose reasonable limits on cross-examination based on, among other things, confusion of the issues. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). We review *de novo* rulings that implicate the Confrontation Clause. *State v. Ellison*, 213 Ariz. 116, ¶ 42, 140 P.3d 899, 912 (2006).

¶23 During Antonio, Sr.'s cross-examination, Almaguer's counsel asked him, "[T]his isn't the first time you've spoken to lawyers about this incident, is it?" A bench conference ensued, at which the prosecutor objected to any mention of the civil lawsuit, maintaining it was not relevant and was offered only to "paint [Antonio, Sr.] in a bad light." The court sustained the state's objection based on the potential for jury confusion, but allowed Almaguer to use deposition transcripts from the civil proceedings to impeach Antonio, Sr.'s testimony.

¶24 A defendant establishes a violation of the Confrontation Clause by demonstrating he was "prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" *Van Arsdall*, 475 U.S. at 680,

16

*quoting Davis v. Alaska*, 415 U.S. 308, 318 (1974) (omission in *Van Arsdall*). We agree with Almaguer that Antonio, Sr.'s lawsuit might show a "prototypical form of bias" toward him, *Van Arsdall*, 475 U.S. at 680, because "[a] reasonable jury could believe that [Antonio, Sr.]'s . . . testimony . . . w[as] motivated, *inter alia*, by economic concerns."

¶25        However, any error in excluding evidence of the lawsuit was harmless because it did not contribute to or affect the verdict. *See Gertz*, 186 Ariz. at 42, 918 P.2d at 1060; *see also Van Arsdall*, 475 U.S. at 682 (denial of opportunity to cross-examine adverse witness not deemed prejudicial in every case). We examine whether the error was harmless based on an inquiry specific to the witness, *Van Arsdall*, 475 U.S. at 680, and consider "the importance of the witness'[s] testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Id.* at 684.

¶26        Here, Almaguer was faced with strong, if not overwhelming, evidence of guilt, and Antonio, Sr. was not the only witness: Antonio, Sr., Abram, and Cota all testified generally consistently about the incident, particularly as to significant aspects of the fight and shooting from their various vantage points. Although Almaguer points out the testimony differed in some details, Abram corroborated Antonio, Sr.'s testimony that Almaguer struck the first blow, pulled out his gun, and was held down by Antonio, Sr.

17

during the altercation. And Cota too testified that Almaguer was the only individual with a gun. The accuracy and truthfulness of Antonio, Sr.'s testimony was not the sole support for the state's case, and Almaguer's counsel impeached his trial testimony using Antonio, Sr.'s prior statements made in connection with the civil lawsuit. The settled civil action against the defendant could have indicated to the jury that Antonio, Sr. was biased against Almaguer. But that evidence of bias pales in comparison to Antonio Sr.'s testimony about his son dying in his arms. *See State v. Dunlap*, 187 Ariz. 441, 456-57, 930 P.2d 518, 533-34 (App. 1996) (no reversible error where motive evidence, though erroneously excluded, cumulative); *Burris*, 131 Ariz. at 567, 643 P.2d at 12 (no reversible error where witness's motive and interest "quite clear" in record, notwithstanding rejected testimony of civil lawsuit). Moreover, because the civil case had been resolved, a desire for a positive outcome to that action could not have motivated Antonio, Sr.'s testimony in the criminal proceedings. We thus conclude any violation of Almaguer's confrontation rights was harmless.

**Denial of Mistrial**

¶27 Last, Almaguer alleges the trial court erred by denying his motion for a mistrial on the ground other-act testimony violated his right to a fair trial. On the second day of trial, during Jolene's cross-examination, Almaguer's counsel suggested that she had "some pretty strong feelings about" Almaguer. Jolene responded:

> I sure do. He violated my house. My kids were there. My kid[s'] family was there. It was the day before my daughter's . . . birthday. You think I'm not going to have hard fee[l]ing[s] about him? He destroyed everything, so

18

> many people's lives, and he's laughing about it. It's not even cool. He goes on the run because he knows he did what he did. And from what I heard, it wasn't the first time.

Jolene's ending comment was unsolicited, in violation of a previous court order precluding character evidence, and apparently contrary to an admonition by the prosecutor. Almaguer moved for a mistrial based on the inference that Jolene had heard Almaguer had killed before. The court denied the motion but instructed the jury that "the previous testimony relating to [Jolene] stating that she heard that Mr. Almaguer had done it before shall be stricken from the record, and shall not be considered by the jury in any manner." Almaguer agreed only to the form of the instruction.

¶28 Rule 404(b), Ariz. R. Evid., prohibits evidence of other acts "to prove the character of a person" as a way to show he acted in conformity with the established character trait. Almaguer argues the trial court's curative instruction was insufficient to cure the prejudice he suffered from Jolene's statement because it generally is difficult for juries to disregard evidence of a defendant's bad character, and a mistrial was required because Jolene's testimony undermined his theory of self-defense. *See State v. Anthony*, 218 Ariz. 439, ¶ 40, 189 P.3d 366, 373 (2008) (erroneous admission of unreliable other-act evidence not harmless, despite limiting instruction, where state repeatedly asserted other-act allegation).

¶29 But the decision to deny a mistrial rests with the discretion of the trial court, and "[w]e will not reverse a conviction based on the erroneous admission of evidence without a 'reasonable probability' that the verdict would have been different

19

had the evidence not been admitted." *State v. Hoskins*, 199 Ariz. 127, ¶ 57, 14 P.3d 997, 1012-13 (2000). The record reflects abundant evidence of Almaguer's guilt, as described above. Because the trial court is in the best position to assess the impact of a witness's statements on the jury, we defer to its discretionary determination. *State v. Dann*, 205 Ariz. 557, ¶ 43, 74 P.3d 231, 244 (2003). Though Jolene's outburst violated the court's order, we see no reasonable probability the verdict was affected by the statement because it was isolated and not mentioned thereafter by the parties. *See Anthony*, 218 Ariz. 439, ¶ 40, 189 P.3d at 373. And jurors are presumed to follow the trial court's instructions, including curative ones. *See State v. Morris*, 215 Ariz. 324, ¶ 55, 160 P.3d 203, 215-16 (2007); *State v. Prince*, 204 Ariz. 156, ¶ 9, 61 P.3d 450, 452 (2003). We see no abuse of discretion in the court's decision to deny a mistrial.

### Disposition

¶30 For all of the reasons set forth above, Almaguer's conviction and sentence are affirmed.

/s/ *Philip G. Espinosa*
PHILIP G. ESPINOSA, Judge

CONCURRING:

/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Presiding Judge

/s/ *J. William Brammer, Jr.*
J. WILLIAM BRAMMER, JR., Judge*

*A retired judge of the Arizona Court of Appeals authorized and assigned to sit as a judge on the Court of Appeals, Division Two, pursuant to Arizona Supreme Court Order filed December 12, 2012.