NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

GRISELDA CARDOZA, *Appellant.*

No. 1 CA-CR 23-0346

FILED 10-29-2024

Appeal from the Superior Court in Maricopa County
No. CR2020-136175-001
The Honorable David J. Palmer, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael T. O'Toole
*Counsel for Appellee*

Maricopa County Office of the Public Defender, Phoenix
By Kristen Reller
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge D. Steven Williams joined.

---

**K I L E Y**, Judge:

**¶1**     A jury convicted Griselda Cardoza of theft of property valued at $100,000 or more. Cardoza now appeals, arguing that the superior court erred in precluding evidence which, she contends, would have established a motive for the State's key witness to falsely accuse her of the charged crime. We affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**     We view evidence in the record in the light most favorable to upholding the jury's verdicts. *State v. Kindred*, 232 Ariz. 611, 613, ¶ 2 (App. 2013).

**¶3**     For five years, Cardoza worked as the controller of a trucking company owned by L.M. and his wife N.M. As controller, Cardoza was responsible, *inter alia*, for making sure the company's bills were timely paid. During her employment, Cardoza used over $475,000 in company funds, without authorization, to pay her personal credit card and utility bills. Cardoza's misappropriation of company funds came to light when she was out of the office on vacation and another employee discovered that some of the company's bills had not been paid.

**¶4**     Cardoza was charged with one count of theft, a Class 2 Felony, under A.R.S. § 13-1802(A)(1).

**¶5**     At trial, the State presented Cardoza's credit card and bank statements reflecting that company funds were used to pay for Cardoza's spa appointments, plane tickets, hotel bills, and other personal expenses. The State also called L.M. to testify about Cardoza's employment and job duties. When asked if Cardoza was authorized to use company funds to pay the personal bills and expenses reflected in her bank and credit card statements, L.M. replied, "Absolutely not." He further testified that Cardoza's employment ended when she quit after arguing with him over her request for a $800 monthly car allowance. According to L.M., Cardoza

2

claimed that he had promised her a car allowance. When L.M. denied ever making such a promise, she replied, "[T]hen I'm going to quit."

¶6 In her testimony, Cardoza did not deny using company funds to pay personal expenses but asserted that L.M. authorized her to do so. She stated that several years earlier she told L.M. that she was having financial difficulties that might force her to seek higher-paying employment elsewhere, and that L.M. dissuaded her from quitting by "offer[ing] to . . . help [her] pay [her] bills and . . . [for her] daily activities."

¶7 When asked on direct examination why she left the company, Cardoza testified that she had been "sexually harassed" and "sexually assaulted" by a co-worker. The State objected, arguing that her claim to have been victimized by a co-worker was irrelevant to the pending charge and was offered merely to elicit sympathy from the jury. In response, Defense counsel pointed out that the State had elicited testimony from L.M. "as far as why [Cardoza] left her employment with" the company, and that Cardoza's testimony was offered in "direct[] respon[se] to [L.M.'s] allegation of why she left." Cardoza offered no other theory to support the admissibility of her testimony about the reason she left the company. Sustaining the State's objection, the superior court ruled that the testimony was both irrelevant and unfairly prejudicial.

¶8 When questioned on cross-examination about a transaction shown on her personal credit card statement reflecting a payment to a law firm, Cardoza replied that she "hired them for a sexual harassment lawsuit" against the company. The State objected and moved to strike the testimony, which the court granted.

¶9 The jury found Cardoza guilty as charged, and further found four aggravating factors. Cardoza was sentenced to 8.5 years imprisonment. This timely appeal followed. We have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

¶10 Cardoza argues that the superior court erred in precluding her testimony about the sexual assault and harassment she purportedly experienced while employed at the trucking company.

¶11 We review a ruling on the admissibility of evidence for abuse of discretion, *State v. Aguilar*, 209 Ariz. 40, 49, ¶ 29 (2004), and will uphold a court's exercise of discretion if it is reasonably supported by the record, *State v. Morris*, 215 Ariz. 324, 341, ¶ 77 (2007). When no objection is made at

trial, the court's ruling is reviewed for fundamental error. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005). To establish fundamental error, a defendant must show that "(1) error exists, (2) the error is fundamental, and (3) the error caused [her] prejudice." *State v. Riley*, 248 Ariz. 154, 170, ¶ 24 (2020). Whether error is fundamental requires the defendant to show that "(1) the error went to the foundation of the case, (2) the error took from the defendant a right essential to [her] defense, or (3) the error was so egregious that [she] could not possibly have received a fair trial." *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018). A defendant alleging an error that falls within the first and second categories must also show resulting prejudice; errors falling into the third category are presumed to be prejudicial. *See id.*

¶12 Noting that she admitted using company funds to pay personal expenses, Cardoza contends that the critical issue in the case was whether L.M. authorized her to do so. L.M. was the "key prosecution witness," Cardoza argues, and his motive "for fabrication, bias, or hostility towards" her was "highly" relevant to his credibility. Her testimony that she was "considering a lawsuit" against L.M.'s company "because she was sexually assaulted at work," she asserts, would have established a motive for L.M. to discredit her by falsely painting her as a dishonest person. A witness's motive to lie is always relevant, she argues, and precluding her from providing testimony that would have established L.M.'s motive to lie denied her the right to present a complete defense.

¶13 But Cardoza never presented this theory of admissibility at trial. Instead, Cardoza argued at trial that her testimony about her purported sexual harassment by a co-worker was relevant because it rebutted L.M.'s testimony that she left the company after an argument about a car allowance. The court did not abuse its discretion in finding the reason for Cardoza's departure from the company to be a collateral issue, and therefore in precluding Cardoza from presenting evidence to controvert L.M.'s testimony on that point. *See Montano v. Scottsdale Baptist Hosp., Inc.*, 119 Ariz. 448, 453 (1978) ("No general rule is better established than that a witness cannot be contradicted for the purposes of impeachment as to collateral matters.").

¶14 To challenge an evidentiary ruling by raising a new theory of admissibility for the first time on appeal runs contrary to fundamental principles of our adversarial system. *See State v. Serna*, 163 Ariz. 260, 267 (1990) (affirming preclusion of proffered evidence and refusing to consider new theory of admissibility that was "advanced for the first time on appeal"); *see also State v. Gendron*, 168 Ariz. 153, 155 (1991) ("Our adversarial system properly and necessarily precludes injection of new issues on

appeal."). The trial court has broad discretion in determining the admissibility of evidence because that court is best positioned to make such determinations in the first instance. *See State v. Wood*, 180 Ariz. 53, 61 (1994) ("Because the trial court is in the best position to judge the admissibility of proffered testimony, we review most evidentiary claims on a discretionary standard."); *State v. Harrison*, 195 Ariz. 28, 33, ¶ 21 (App. 1998) ("The trial court is in the best position to balance the probative value of challenged evidence against its potential for unfair prejudice. Thus, it has broad discretion in deciding the admissibility."). It is for this reason that parties are required to present their theories of admissibility to the trial court for its consideration before challenging the court's ruling on appeal. *See State v. White*, 194 Ariz. 344, 354, ¶ 44 (1999) ("Our adversarial system properly and necessarily precludes injection of new issues on appeal. . . . In most instances, issues must be raised in the trial court, both to create a record to serve as a foundation for review, and to allow the lower court an opportunity to weigh and decide the issue."); *State v. Ibeabuchi*, 248 Ariz. 412, 417, ¶ 20 n. 2 (App. 2020) (holding that argument raised for first time on appeal "is deemed waived").

¶15        Because Cardoza raises this theory of admissibility for the first time on appeal, she may obtain relief only if she establishes that the preclusion of her testimony constituted fundamental error. *State v. Bible*, 175 Ariz. 549, 572 (1993) ("Only fundamental error . . . may be raised for the first time on appeal.") (citation omitted); *State v. Allen*, 253 Ariz. 306, 325, ¶ 13 (2022) (noting that defendant bears burden of establishing fundamental error).

¶16        "[T]he first step in fundamental error review is determining whether trial error exists." *Escalante*, 245 Ariz. at 142, ¶ 21. Cardoza asserts that the court erred in sustaining the State's objection to her testimony that she intended to sue L.M.'s company after being sexually assaulted and harassed by a co-worker because, she contends, such testimony "would have shown that [L.M.] had a motive" to discredit her by falsely accusing her of theft. Indeed, she goes on, her testimony was not only "highly probative" of L.M.'s credibility but critical to her defense, because L.M.'s "motives, bias, and hostility could not be proven otherwise." In response, the State argues that "Cardoza fails to show any error in the trial court's preclusion of her testimony" because Cardoza's theory that L.M. "sought to pursue charges against her or color his trial testimony because of the putative suit" was not tenable absent evidence that L.M. "was aware Cardoza was contemplating filing a lawsuit against his company." We agree with the State.

¶17        A party has wide latitude in presenting evidence of an adverse witness's possible bias and motive to lie. *See Davis v. Alaska*, 415 U.S. 308, 316-17 (1974) ("[E]xposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination."); *State v. Almaguer*, 232 Ariz. 190, 197, ¶ 22 (App. 2013) ("The Sixth Amendment [to the U.S. Constitution] protects a defendant's ability to prove a witness's motive or bias."). A witness's possible bias or motive may be shown, for example, by evidence that the outcome of the pending trial may benefit the witness in other pending or future litigation. *See, e.g., State v. Gertz*, 186 Ariz. 38, 42 (App. 1995) ("Arizona case law . . . recognizes that evidence of a civil action by a complaining witness against the defendant . . . has a direct bearing on the credibility of the witness to show bias and prejudice.") (citation omitted); *see also State v. Parkinson*, 554 P.3d 1, 8, ¶ 22 (App. 2024) (reversing domestic violence assault conviction due to improper preclusion of evidence of charges pending against the victim for allegedly assaulting the defendant on another occasion; "[The] pending charges [against the victim] provided a powerful potential motive for [her] to lie to police" to "characterize [the defendant] as the aggressor in the relationship.").

¶18        It is logically impossible, however, for a person to be influenced by a matter of which he or she is unaware. Cardoza's contention that her intent to sue L.M.'s company gave L.M. an incentive to testify falsely against her is not tenable, therefore, absent evidence that L.M. knew of the threat of litigation. *See, e.g., State v. Cooke*, 682 A.2d 513, 516-17 (Conn. App. 1996) (affirming the preclusion of this line of inquiry where defendant sought to elicit evidence that victim had filed suit against police officers for unrelated reasons and then "explore on cross-examination whether [her] pending lawsuit had any effect on the manner in which the police conducted" the investigation; the court held that "[t]he defendant's claim that the police were motivated to pursue the criminal complaint against [him] to appease" the victim was "unsupported" because the investigating officer "was not aware" of her lawsuit and so "could not have been biased or motivated by some ulterior motive in pursuing the [charges] against the defendant"); *Porter v. United States*, 561 A.2d 994, 996 (D.C. App. 1989) (affirming the preclusion of the proffered evidence where defendant sought to elicit evidence of his pending civil suit against police department to establish arresting officer's bias; the court held the defendant's "failure to proffer" any evidence that arresting officer "had actual knowledge of the pending civil suit against the police department was fatal to establishing [the officer's] bias").

¶19　　　　Cardoza proffered no evidence that L.M. knew, or had reason to suspect, that she had been sexually assaulted or harassed by a co-worker, or that she intended to sue the company. She never testified that she informed L.M. of any of those facts, nor did she make an offer of proof that L.M. had knowledge of any of those facts from another source. In the absence of any indication in the record that L.M. was aware that Cardoza intended to assert a claim against the company for sexual assault or harassment, she failed to establish the inferential link necessary to make her intent to file suit relevant to establishing that L.M. may have had a motive to discredit her by falsely accusing her of theft. We therefore hold that the superior court did not err in excluding, as irrelevant and unfairly prejudicial, Cardoza's testimony that she intended to sue the company because she was sexually assaulted and harassed by a co-worker. *See* Ariz. R. Evid. 402, 403. Because Cardoza has failed to establish trial error, our fundamental error analysis is at an end. Cardoza is entitled to no relief.

## CONCLUSION

¶20　　　　We affirm.



AMY M. WOOD • Clerk of the Court
FILED:　AGFV

7